IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| KENNETH BAKER, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 12-139 |
|  | ) | Magistrate Judge Cynthia Reed Eddy |
| DEBRA YOUNKIN; | ) |  |
| *ET AL.*, | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff filed a civil rights complaint in this Court on July 18, 2012. On December 10, 2012, Defendant Younkin filed a Motion to Dismiss (ECF No. 19) and a Brief in Support (ECF No. 20). On December 11, 2012, this Court issued a three-page Order for Plaintiff to respond to the pending motion to dismiss (ECF No. 21). That Order gave Plaintiff the opportunity to file an amended complaint with respect to the deficiencies set forth in the pending motion to dismiss as required by Third Circuit precedent. *See* Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). On December 18, 2012, Defendant Naji filed a Motion to Dismiss (ECF No. 22) along with a Brief in support thereof (ECF No. 23). On December 19, 2012, this Court issued another three-page Order for Plaintiff to respond to the pending motion to dismiss giving him another opportunity to file an amended complaint with respect to the deficiencies set forth in the pending motion to dismiss (ECF No. 24). On January 2, 2013, Plaintiff filed a supplement to his Complaint (ECF No. 26) and on January 4, 2013, Plaintiff filed his Response to the pending motions.

For the reasons set forth below, Defendants' Motions will be granted. Because Plaintiff

---

[1]. The parties consented to jurisdiction by a United States Magistrate Judge. *See* ECF Nos. 6, 35 and 36. *See also*

1

previously was informed that his original complaint was deficient and was given two opportunities to cure the deficiencies by filing an amended complaint, this Court is not required to provide further leave to amend. *See* Shelley v. Patrick 481 F. App'x 34, 36 (3d Cir. 2012).

## A. Standard of Review

Presently pending before the Court are Defendants' Motions to Dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

---

28 U.S.C. § 636(c)(1).

2

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004); Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

## B. Plaintiff's Allegations

Plaintiff contends that while incarcerated at the Correctional Institution at Houtzdale (SCI-Houtzdale), Defendants failed to provide timely and appropriate medical treatment for his pre-existing sleep apnea condition. Plaintiff's claim originated when his personal bi-pap machine began to not work properly. Plaintiff reported the problem to Defendants on or about May 25, 2012. In response, Dr. Naji ordered that Plaintiff remain housed in the infirmary while his bi-pap machine was repaired or replaced. Ultimately Plaintiff was told that his bi-pap machine was too old to update the settings and that a new bi-pap would be ordered. On June 7, 2012, Plaintiff received a new bi-pap machine, which was different from his previous machine in that it did not contain a humidifier. Plaintiff reported the differences to the Defendants and requested the new machine be exchanged. This request was denied and Plaintiff demands that he be seen by a specialist and be transferred to an institution that could oversee his medical condition.

Attached to his Complaint is a response he received to Grievance 414236, which provides as follows.

> The following is a summary of my findings regarding your grievance:
>
> Baker grieves he has sleep apnea and has a bi-pap machine that has been broken for 3 weeks. Baker states he was admitted to the infirmary 5/25/12 - 5/30/12 until his bi-pap machine was repaired or replaced. Baker states while he was "housed" in the infirmary, he was ignored and locked in his cell. Baker seeks to be transferred to a medical facility that can accommodate his illness. Baker states his condition is worsening while he is without his bi-pap machine. Baker states this is a medical emergency.
>
> The medical record was reviewed. Baker has a past history of sleep apnea and entered the DOC 11/16/11 with his personal bi-pap. Baker reported the bi-pap was not working properly. Per orders of the medical director, Baker was housed in the infirmary on 5/24/12 - not admitted as stated by grievant, until the

4

bi-pap could be repaired. Baker was housed in the infirmary for the initial time his machine was being evaluated for repairs. Documentation on 5/30112 from the medical director indicates that while housed in the infirmary, Baker stated he had no trouble breathing at night. He was discharged back to general population. On 5/30/12, Baker was issued his original bi-pap machine, instructed his model of bi-pap machine is operable but too old to update the settings and a new bi-pap was ordered. On 6/7/12, Baker was issued a new bi-pap machine. Additionally, there is no documentation of respiratory difficulty following transfer to general population on 5/30/12.

In summary, Baker was housed in the infirmary for the initial time period that his bi-pap was being evaluated for repair. Infirmary housing afforded him opportunity for immediate medical response if needed. Medical assessment conducted after 5 days without bi-pap indicated no difficulty with respiratory status. The original bipap was issued to Baker upon discharge to general population until a new bi-pap was received. There is no medical indication of medical emergency or need of transfer to another facility. Baker has been issued a new bipap machine. This grievance is resolved.

ECF No. 5-1, p. 5. He appealed to the Superintendent who upheld the response on June 27, 2012.

### C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to the Civil Rights Act, 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds,* Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

There is no question that the Defendants were acting under color of state law with respect to the actions alleged in the Complaint. Therefore, the issue is whether Plaintiff has alleged a violation

5

of any right under federal law. Plaintiff's claim concerning his medical treatment invokes the protections of the Eighth Amendment, as applied to the states through the Fourteenth Amendment. In order to make out a *prima facie* case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

The Supreme Court has explained that the first showing requires the court <u>objectively</u> to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (internal citation omitted).

The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind. *Id. Accord* Wilson, 501 U.S. at 297. Recently, the Supreme Court clarified the proper test for determining when correctional officials act with "deliberate indifference."

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk

6

of serious harm exists, and he must also draw the inference .... The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Farmer, 511 U.S. at 837. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." Id. Thus, a prison official may be held liable under the Eighth Amendment only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992). To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court objectively to determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of permanent injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

7

In the case at bar, Plaintiff claims that he received inadequate medical care for his knee problem. A plaintiff alleging constitutionally inadequate medical treatment must allege a "serious medical need" sufficient to satisfy the objective component of the test. Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987). In Boring, the Court of Appeals for the Third Circuit concluded that, with respect to an ulnar nerve injury, knee injury, and migraine headaches, a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id.* In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment [which] remains a question of sound professional judgment.'" *Id.* (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)).

Here, despite filng two amended complaints, Plaintiff has not made any allegation to substantiate the existence of any serious medical need with regard to his knee. As with the medical complaints in Boring, a lay person would not be able to conclude from Plaintiff's allegations that he suffered from a serious medical need.[1] *See* Rodriguez v. Kincheloe, 967 F.2d 590 (Table), 1992 WL 144610 (9th Cir. June 26, 1992) (holding that prisoner's eighth

---

1. *See* Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir. 1995) (inmate failed to submit sufficient evidence that defendants ignored an acute or escalating situation or that delays adversely affected his prognosis, given the type of injury in this case); Beyerbach v. Sears, 49 F.3d 1324 (8th Cir. 1995) (inmate failed to present any verifying medical evidence to establish the objective component of his claim); Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (an inmate complaining that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to succeed); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990) (to objectively determine whether a "serious deprivation" of a basic human need has occurred (*i.e.*, whether prison conditions to rise to the level of unconstitutional punishment), there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition).

8

amendment claim failed because he failed to offer any evidence that his knee condition was serious or that prison officials were deliberately indifferent to his medical needs).

Moreover, even if the court were to conclude that Plaintiff had demonstrated the existence of a serious medical need, he has failed to demonstrate that Defendants were deliberately indifferent to it. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.* Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Estelle v. Gamble, 429 U.S. 97, 104 (1978); Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

In the case at bar, Plaintiff has set forth no allegation that any Defendant acted with deliberate indifference to a serious medical need for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Specifically, there is nothing that suggests that any Defendant knew that Plaintiff faced a substantial risk of serious harm by failing to provide him with a humidifier. Thus, Defendants' Motion may be granted on

9

the basis that Plaintiff's allegations fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983. *See* Alfred v. Winn Correctional Center, 368 F. App'x 583, 583 (5th 2010) (fact that state prisoner received medical attention for his sleep apnea and sleep apnea never posed serious risk to prisoner's health, precluded prisoner's claim that purported denial by prison officials of continuous positive airway pressure machine constituted deliberate indifference); Alfred v. Forcht Wade Correctional Center, 354 F. App'. 58, 58 (5th Cir. 2009) (holding that trial court did not abuse its discretion in dismissing as frivolous state prisoner's in forma pauperis complaint alleging his Eighth Amendment rights were violated when he was not provided with a continuous positive airway pressure (CPAP) machine to treat his diagnosed severe sleep apnea where the record showed that prisoner received adequate medical treatment for his sleep apnea).

AND NOW, this 19th day of February, 2013;

**IT IS HEREBY ORDERED** that Defendant Younkin's Motion to Dismiss (ECF No. 19) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Naji's Motion to Dismiss (ECF No. 22) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED.**

**AND IT IS FURTHER ORDERED** that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure, if he so desires.

*Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

Kenneth Baker, KF-9152
SCI Houtzdale
P.O. Box 1000
Houtzdale, PA 16698-1000